Caleb L. McGillvary, Pro Se
#1222665/SBI#102317G NJSP
PO Box 861 Trenton, NJ 08625

November 14, 2024

Clerk, US Dist. Ct. - D.N.J.
4th & Cooper Sts.
Camden, NJ 08101-2792

        RE: Caleb L. McGillvary v. Bruce Davis, Adm'r NJSP
        Civil Action No. 1:22-cv-04185-MRH
        Hon. Mark R. Hornak, U.S.D.J.
        Hon. Richard A. Lanzillo, U.S.M.J.

Dear Clerk;

        Please find enclosed and file onto the docket my written

objections to the magistrate's report & recommendation, ECF 55,

and Exhibit A thereto; and proof of service thereof; in the

above-captioned matter.

                                        Kind Regards,

                                        Caleb L. McGillvary
                                        In Propria Persona

ENCL:
CC: FILE

RECEIVED

NOV 18 2024

AT 8:30_____ M
CLERK, U.S. DISTRICT COURT - DNJ

PROOF OF SERVICE

        I, Caleb L. McGillvary, declare pursuant to 28 U.S.C. 1746 that on today's date, I placed in the institutional mailing system here where I'm incarcerated at NJ State Prison 3rd & Federal Streets Trenton, NJ 08625; with First Class Postage prepaid to be sent via USPS Mail; the original of my written objections to the magistrate's report & recommendation, ECF 55, and Exhibit A thereto; to the Clerk of the District Court at the District of New Jersey, 4th & Cooper Sts. Camden, NJ 08101-2792; and a copy of said document to counsel for Respondent in Dkt. No. 1:22-cv-04185-MRH;

Amanda G. Schwartz
Office of the Attorney General
25 Market St., PO Bx 085
Trenton, NJ 08625-0085

I hereby invoke the prison mailbox rule. See Houston v. Lack, 487 U.S. 266 (1988).

I declare under penalty of perjury that the foregoing statements made by me are true and accurate.
Executed this 14ᵗʰ Day of NOVEMBER , 2024

                                        _____
                                        Caleb L. McGillvary, Pro Se
                                        #1222665/SBI#102317G NJSP
                                        PO Box 861 Trenton, NJ
                                        08625-0861

Caleb L. McGillvary, Pro Se
#1222665/SBI#102317G NJSP
PO Box 861 Trenton, NJ 08625

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| Caleb L. McGillvary | ) CIVIL ACTION NO. |
| PLAINTIFF | ) 1:22-cv-04185-MRH |
| | ) |
| V. | ) Hon. Mark R. Hornak, USDJ |
| | ) Hon. Richard A. Lanzillo, USMJ |
| Bruce Davis, Administrator | ) |
| NJSP, Attorney General of NJ | ) |
| DEFENDANT | ) |
| | ) |

## WRITTEN OBJECTIONS TO MAGISTRATE'S REPORT AND RECOMMENDATION

RECEIVED

NOV 18 2024

AT 8:30_____M
CLERK, U.S. DISTRICT COURT - DNJ



## TABLE OF CONTENTS

I. Objections to Recommendation   ...1

 **A. The R&R Does Not Apply Liberal Construction to Either of Petitioner's Pleadings, And Refuses to Adjudicate the Allegations of The Traverse and Reply**   ...1

 **B. The R&R Conflicts with the Law of the Case**   ...2

 **C. The R&R Erroneously Denies the Summary Judgment Motion, ECF 44, as Duplicative; When that Motion in Fact Sets Forth Judicially Noticeable Facts Which may Be Included Under Habeas Rule 7; and Undisputed Facts of the Investigator's Knowledge of the Exculpatory Value of Evidence at the Time it was Lost**   ...3

 **D. The R&R Ignores the Allegations in the Reply and Undisputed Facts in the Summary Judgment Motion, Which Entitle Petitioner to Habeas Relief**   ...4

 **E. The Contrary Decisions and Circuit Split on Each of the Issues Upon Which a COA is Requested, are Per Se Evidence that Jurists of Reason Would Find the Issues Debateable**   ...4

 **F. The Existence of Pre-Trial Evidence Bearing on Key Issues Makes These Issues Deserving of Encouragement to Proceed Further, Whether to Summary Judgment or Discovery and Evidentiary Hearing**   ...6

II. Objections to Report   ...7

 A. The Petition Should Be Granted   ...7

 B. Factual Background   ...8

 C. Procedural History   ...8

 D. Applicable Legal Standard   ...13

 E. Analysis   ...14

  1. Statute of Limitations   ...14

  2. Procedural Default   ...14

  3. Merits   ...15

   a. Ground One   ...15

ii

b. Ground Two                                    ...22

4. Certificate of Appealability                  ...31

III. The R&R Doesn't Address the Motion at ECF 52, 53    ...31

CONCLUSION                                        ...32

CERTIFICATION OF PETITIONER                       ...33

## TABLE OF AUTHORITIES

**CASELAW**

Beard v. Kindler, 558 U.S. 53 (2009)                    ...24

Bedrosian v. IRS, 42 F.4th 174 (CA3 2022)              ...2

Bond v. Fulcomer, 864 F.2d 306 (CA3 1989)             ...12

Brady v. Maryland, 373 U.S. 83 (1963)           ...in passim

Buhl v. Cooksey, 233 F.3d 783 (CA3 2000)        ...19, 20, 21, 22

Castille v. Peoples, 489 U.S. 346 (1989)             ...12

Clark v. Pa., 892 F.2d 1142 (CA3 1989)            ...11, 12

Dye v. Hofbauer, 546 U.S. 1 (2005)                   ...12

Erickson v. Pardus, 551 U.S. 89 (2007)             ...1, 7

Faretta v. California, 422 U.S. 806 (1975)      ...in passim

Gonce v. Redman, 780 F.2d 333 (CA3 1985)             ...12

Greene v. Fisher, 564 U.S. 34 (2011)            ...11, 19, 29

Haines v. Kerner, 404 U.S. 519 (1972)              ...1, 7

Holloway v. Horn, 355 F.3d 707 (CA3 2004)            ...12

Huffman v. Florida, 435 U.S. 1014 (1978)             ...17

James v. Kentucky, 466 U.S. 341 (1984)               ...17

Johnson v. Lee, 136 S. Ct. 1802 (2016)               ...24

Kimmelman v. Morrison, 477 U.S. 365 (1986)           ...11

Lee v. Kemna, 534 U.S. 362 (2002)                 ...17, 24

McGillvary v. Union County, 2020 WL 2079266 (D.N.J. 2020)    ...5

McGillvary v. Galfy, 2022 U.S. Dist. LEXIS 134998 (D.N.J. July 28, 2022)...5

McKaskle v. Wiggins, 465 U.S. 168 (1984)          ...18, 23

Miloseska v. Liberty Travel, Inc., 2013 U.S. Dist. LEXIS 6487 (D.N.J. Jan. 15, 2013)...1

Nara v. Frank, 488 F.3d 187 (CA3 2007) ...24

O'Sullivan v. Boerckel, 526 U.S. 838 (1999) ...1

Osborne v. Ohio, 495 U.S. 103 (1990) ...17

Saab v. Zambelli Fireworks Mfr'g Co., 2021 U.S. Dist. LEXIS 32071 (W.D. Pa. 2021) (C.J. Hornak)...13

Saranchak v. Secretary, 802 F.3d 579 (CA3 2015) ...11

Shinn v. Ramirez,  2022 U.S. LEXIS 2557 (2022) ...29

Smith v. Digmon, 434 U.S. 332 (1978) ...12

Tennard v. Dretke, 542 U.S. 274 (2004) ...5

Thomas v. Horn, 570 F.3d 105 (CA3 2009) ...11, 24

United States v. Doe, 810 F.3d 132 (CA3 2015) ...6

United States v. Peppers, 302 F.3d 120 (CA3 2002) ...17

Workman v. Superintendent, 915 F.3d 928 (CA3 2019) ...1, 7

**STATUTES**

28 U.S.C. 636(b)(1)(C) ...1

28 U.S.C. 2248 ...1

28 U.S.C. 2254(d) ,,,13

28 U.S.C. 2254(e)(1) ...11, 13

28 U.S.C. 2254(e)(2) ...29

## COURT RULES

D.N.J. L. Civ. R. 56.1(a)                      ...3, 8, 23, 28

D.N.J. L. Civ. R. 72.1(c)(2)                          ...1

Fed. R. Civ. P. 7(a)(7)                   ...1, 5, 13, 25, 28

Fed. R. Civ. P. 9(b)                               ...2, 27

Fed. R. Civ. P. 56                                    ...3

Fed. R. Civ. P. 72(b)                                 ...1

Fed. R. Evid. 201(b)                            ...8, 9, 28

Fed. R. Evid. 406                                    ...30

Habeas Rule 5(c),(d)                             ...2, 28

Habeas Rule 5(e)                                      ...1

N.J.C.R. 1:6-2(a)                                    ...17

## CONSTITUTIONAL PROVISIONS

U.S. Const. Amdt. VI      ...15, 17, 20

Petitioner Caleb L. McGillvary (Petitioner) hereby makes specific objections to the magistrate's report and recommendation, ECF 55, (R&R) in the above captioned matter. The U.S. District Court for the District of New Jersey is required under 28 U.S.C. 636(b)(1)(C), Fed. R. Civ. P. 72(b), and D.N.J. L. Civ. R. 72.1(c)(2) to make de novo determination of those portions of magistrate judge's R&R to which Petitioner has filed objection. See Miloseska v. Liberty Travel, Inc., 2013 U.S. Dist. LEXIS 6487 (D.N.J. Jan. 15, 2013). Petitioner objects to the R&R as erroneous and contrary to law as follows:

## I. Objections to Recommendation

### A. The R&R Does Not Apply Liberal Construction to Either of Petitioner's Pleadings, And Refuses to Adjudicate the Allegations of The Traverse and Reply

1.) The R&R doesn't provide the liberal construction of Petitioner's pleadings required by Haines v. Kerner, 404 U.S. 519 (1972), Erickson v. Pardus, 551 U.S. 89, 94 (2007), and Workman v. Superintendent, 915 F.3d 928, 941 (CA3 2019). Also, the R&R doesn't address the allegations or contentions in the Petitioner's Traverse and Reply, filed as ECF 16 (Reply) in this matter, at all; much less liberally construe them. The Reply is not a brief in opposition to the Answer, as the R&R has mischaracterized it. It is a pleading. See Fed. R. Civ. P. 7(a)(7); Habeas Rule 5(e), 28 U.S.C. 2248. In a test of sufficiency of allegations in the pleadings, it is manifestly

1

unjust for the R&R to report that Plaintiff failed in his initial
pleading, the habeas petition, to cite to a record and evidence
that was unavailable to him until the Respondent filed it with
their Answer, ECF 12 (Answer); when his subsequent pleading, the
Reply, is replete with citations to the record and evidence. The
pleading filed as ECF 16 is incorporated in support of each
objection hereinafter in which reference to "Reply" is made.

### B. The R&R Conflicts with the Law of the Case

2.) The R&R repeatedly cites to the Habeas Petition in this
matter, ECF 1, (Petition) as not properly alleging facts which,
if proven, would entitle Petitioner to habeas relief. However, it
is the law of the case that the Petition has stated a claim for
relief on the facts alleged in the Petition, for reason of the
argument contained in the Memorandum; ECF 2 (Memorandum). See ECF
6; see also Bedrosian v. IRS, 42 F.4th 174, 181 (CA3 2022) (the
law of the case doctrine "prevents reconsideration of legal
issues already decided in earlier stages of a case"). The R&R's
repeated references to "bald and conclusory statements" that are
"unsupported by evidence", wrongly assume that Plaintiff has the
burden of producing the record in his Petition. But as soon as
Respondent produced the record pursuant to Habeas Rule 5(c),(d);
Petitioner then filed his pleading, the Reply, which was replete
with references to the record and supporting evidence. Until this
record, and the evidence within, was provided; it was law of the
case that Petitioner had generally  alleged conditions of  mind,
like bad faith of the investigators, as required by Fed. R. Civ.

2

P. 9(b). The R&R misses the brief attached as Exhibit A to the Petition, which was replete with references to evidence showing bad faith, and incorporated by reference into the Petition. See ECF 1.7. The R&R erroneously does not apply the law of the case doctrine. The pleading filed as ECF 1, and its attachments, are incorporated in support of each objection hereinafter in which reference to "Petition" is made. The brief filed as ECF 2 is incorporated hereinafter in each objection in which reference to "Memorandum" is made.

**C. The R&R Erroneously Denies the Summary Judgment Motion, ECF 44, as Duplicative; When that Motion in Fact Sets Forth Judicially Noticeable Facts Which may Be Included Under Habeas Rule 7; and Undisputed Facts of the Investigator's Knowledge of the Exculpatory Value of Evidence at the Time it was Lost**

3.) The recommendation that the summary judgment motion, ECF 44, 48, (SMJ Motion) should be denied as duplicative of the Petition, erroneously does not apply D.N.J. L. Civ. R. 56.1(a) and Fed. R. Civ. P. 56 to the Statement of Material Facts Not In Dispute contained in ECF 44 (SMF-SMJ Motion); which Petitioner incorporates by reference herein from where it is attached hereto as Exhibit A; and which Petitioner hereinafter incorporates in support of each objection hereinafter in which reference to "SMF-SMJ Motion" is made. Petitioner indicated judicially noticeable facts, and facts within the record provided by Respondent, therein; that significantly expanded upon the Petition.

3

Respondent failed to file a responsive statement of material facts, and is thus deemed to have admitted the facts which Plaintiff alleged in his statement. See D.N.J. L. Civ. R. 56.1(a). Plaintiff incorporates by reference his brief in support, ECF 44, and in reply to the Respondent's opposition, ECF 48, of his SMJ Motion; to this objection; and also incorporates same hereinafter in support of each objection in which reference to "SMJ Motion" is made". Petitioner sets forth SMF-SMJ Motion and SMJ Motion herein as showing that relief should have issued on the motion for summary judgment.

## D. The R&R Ignores the Allegations in the Reply and Undisputed Facts in the Summary Judgment Motion, Which Entitle Petitioner to Habeas Relief

4.) Petitioner objects to the R&R's recommendation that habeas relief be denied, for all the reasons set forth in these objections, and in his Petition; his Memorandum; his Reply; his SMF-SMJ Motion; and his SMJ Motion; each of which are set forth through incorporation by reference herein in support of this objection and each objection made in this document.

## E. The Contrary Decisions and Circuit Split on Each of the Issues Upon Which a COA is Requested, are Per Se Evidence that Jurists of Reason Would Find the Issues Debateable

5.) Petitioner objects to the R&R's recommendation that a Certificate of Appealability (COA) should not issue, because jurists of reason would find the conclusions of law and fact in

4

the R&R debateable for all the reasons set forth in these objections, and in his Petition; his Memorandum; his Reply; his SMF-SMJ Motion; and his SMJ Motion; each of which are set forth through incorporation by reference herein in support of this objection; and because reasonable jurists would find all of the recommendation issues debateable, or adequate to deserve encouragement to proceed further, for the reasons given in all of these objections and the documents incorporated by reference therein. The R&R does not apply the standard set forth by the Supreme Court, that a COA shall issue if the Petitioner shows that reasonable jurists could debate whether the petition should have been resolved differently, or that the issues are adequate to deserve encouragement to proceed further. See Tennard v. Dretke, 542 U.S. 274, 282 (2004). It is also erroneous because it does not apply that standard to whether jurists of reason may find the following issues debateable:

a.) the R&R's refusal to consider the allegations in the Reply as a pleading under Fed. R. Civ. P. 7(a)(7);

b.) the R&R's denial of the SMJ Motion, with its undisputed Statement of Material Facts not in Dispute; especially when its applicability in habeas contexts is subject of both intercircuit and intracircuit splits; See SMJ Motion; See also United States v. Doe, 810 F.3d 132, 146-147 (CA3 2015) (a lively debate in the circuits shows an issue is "debateable amongst jurists of reason" for COA, especially in a circuit split);

5

c.) the R&R's denial of Ground Two, without considering the evidence or arguments in the Reply; especially considering a Due Process violation under Brady has already been found to be alleged under the same nexus of law and facts by a jurist of reason who has Heck-barred two lawsuits on that nexus, finding that Petitioner alleged the facts of a Brady claim on the nexus; See McGillvary v. Union County, 2020 WL 2079266 (D.N.J. 2020); McGillvary v. Galfy, 2022 U.S. Dist. LEXIS 134998 at *29-30 (D.N.J. July 28, 2022) ("Plaintiff sufficiently alleges a conspiracy among [his trial counsel and the state prosecutor] to deprive him of his Due Process rights ... the Court credits Plaintiff's allegations that Dr. Pandina's testimony, if offered at trial, would have allowed Plaintiff to prove intoxication by clear & convincing evidence, and this would have changed the outcome of the trial"). Because a Brady claim was sufficiently alleged in each of those two lawsuits, the claim must be debateable amongst jurists of reason as adequate to   deserve encouragement to proceed further;

d.) the R&R's denial of Ground One, when the waiver by ambiguity or acquiescence doctrine is the subject of a lively intercircuit split; See Petition for Certiorari, ECF 12.25 (Setting forth dozens of cases from numerous circuits at odds with each other on whether Faretta rights are waived); United States v. Doe, 810 F.3d at 146-147.

6

**F. The Existence of Pre-Trial Evidence Bearing on Key Issues**

**Makes These Issues Deserving of Encouragement to Proceed Further,**

**Whether to Summary Judgment or Discovery and Evidentiary Hearing**

6.) Petitioner objects to the R&R's recommendation that Discovery and an Evidentiary Hearing should not be conducted, in that the SMF-SMJ Motion and SMJ Motion properly sets forth material facts not in dispute which entitle Petitioner to habeas relief without need for Discovery or an Evidentiary Hearing; but in the alternative, his Petition; his Memorandum; his Reply; his SMF-SMJ Motion; and his SMJ Motion; each of which are set forth through incorporation by reference herein in support of this objection: set forth allegations which substantiate each element of his claims and deserve encouragement to proceed further.

## II. Objections to Report

## A. The Petition Should Be Granted

7.) Petitioner objects to the strict scrutiny which the R&R subjects his self-represented Petition to, and avers that as a pro se litigant he is entitled to liberal construction under Haines v. Kerner, 404 U.S. 519 (1972), Erickson v. Pardus, 551 U.S. 89, 94 (2007), and Workman v. Superintendent, 915 F.3d 928, 941 (CA3 2019). The R&R also doesn't take the Reply pleading into account, as set forth in "1" above; or the SMF-SMJ Motion, as set forth in "3" above.

8.) Petitioner objects to the conclusion that the Petition should be denied, for all the reasons set forth in these objections, and

7

in his Petition; his Memorandum; his Reply; his SMF-SMJ Motion;
and his SMJ Motion; each of which are   set forth through
incorporation by reference herein in support of this objection.

## B. Factual Background

9.) Petitioner objects to the factual background as set forth in
the R&R, and incorporates by reference the factual background set
forth in his Reply; his SMF-SMJ Motion; and in his SMJ Motion; in
support of this objection, as providing clear and convincing
evidence contradicting which portions of the state Court record
cited by the R&R it conflicts with. The R&R does not cite to the
Reply, which is a pleading, whatsoever; but cites a state court
opinion that is contradicted by the evidence  within it; and
doesn't account for material facts deemed admitted by Respondent
in the SMF-SMJ Motion and the SMJ Motion. Plaintiff incorporates
by reference and sets forth  fully herein the Statement of the
Case from his Reply; and also the factual background from his SMJ
Motion, as undisputed by Repspondent pursuant to D.N.J. L. Civ.
R. 56.1(a), from where it is found at ECF 44 on the docket.

## C. Procedural History

10.) Petitioner objects to the procedural history of the R&R
insofar as it differs from the procedural history set forth in
his Reply; his SMF-SMJ Motion; and in his SMJ Motion; each of
which Petitioner incorporates by reference in support of this
objection. The R&R does not cite to the Reply, which is a
pleading, whatsoever; and doesn't account for material facts
deemed admitted by Respondent in the SMF-SMJ Motion and SMJ

8

Motion regarding procedural history. Plaintiff sets forth the procedural history from his SMJ Motion, as undisputed by Repspondent pursuant to D.N.J. L. Civ. R. 56.1(a), from where it is found at ECF 44 on the docket.

11.) The procedural history doesn't account for the period between Petitioner's arrest on May 16, 2013, and the issuance of the superseding indictment on May 18, 2016. Petitioner incorporates by reference and sets forth herein the statement of facts from his motion to advance the cause; ECF 52.1; and his Brief in Support; ECF 53; as showing judicially noticeable news articles which indicate Petitioner had filed numerous requests to proceed pro se, and motions seeking relief for Brady violations, which were both ignored and subsequently deleted from the State Court docket by the Trial Court. See F.R.E.  201(b). Petitioner further objects that the State Court docket attached to Respondent's Answer shows that all entries between 2013-2016 were purged from the docket, except for two cherry picked ones added in 2019. See ECF 12.7, Page 52a. These facts are important to consider in light of Petitioner's Faretta Claim.

12.) The procedural history mischaracterizes Plaintiff's December 27, 2018 pro se motion, as only concerning Brady violations. Plaintiff has alleged in his Petition, that he specifically indicated in his moving papers, in writing, that he chose to proceed pro se and waive representation by counsel. See ECF 1, P.8, 11. The Respondent has provided the record of the State Court docket report showing that these moving papers included a

notice, brief, proposed order, and certification in support of his motion under Brady and in support of his request to proceed pro se. See ECF 12.7, P.55a-56a. However, the Respondent has shown by this record that these documents were deleted deliberately by the Trial Court, and has not produced them to date. Ibid. The only document Petitioner has in his possession is the brief in support of the motion, but he has verified his pleading and stated from personal knowledge that he recollects the contents of his notice and certification. Because Respondent has destroyed the notice and certification, Petitioner's allegations that they contained an explicit notice in writing of his intent to waive counsel and proceed pro se should be accepted as true. See ECF 6 (respondent required to provide copies of all pro se filings in the State Court).

13.) The R&R's recounting of Petitioner's allegations in his Brady motion doesn't take into account his brief in support thereof, which was incorporated by reference into his Petition and set forth therein as allegations; See ECF 1.7.

14.) The R&R's statement that an "exacting review of the record indicates that McGillvary never reasserted a request to proceed pro se until after his trial" is specifically rebutted by Petitioner's allegations that he moved again twice in that same hearing, but was silenced both times by the Trial Court. See ECF 16, P.5. The R&R also ignores Petitioner's averment, supported by the record, that the Trial Court made findings on his comportment and demeanor; which findings undercut the R&R's contention that

10

Petitioner, pre-testimony, would have willingly challenged the Trial Court. See ECF 16, P.5-6.

15.) The R&R states that the Trial Court recounted disruptive, combative, manipulative, and obstructive conduct at every stage of the proceeding; but this claim is not supported by the record. In fact, there was no instance of conduct so characterized by the Trial Court prior to the Trial Court participating overzealously in the cross-examination of Petitioner as he testified on April 17, 2019; and the Trial Court had described Petitioner as a "perfect gentleman" who "comported himself lucidly" and "cooperatively" at every point in the proceedings leading up to that point. See ECF 16, P.5-6; ECF 12.35, P23L18-21 (Hereinafter "P" refers to "page" and "L" refers to "line", when used to indicate locations in the transcript of a proceeding, such that "P23L18-21" refers to "page 23, lines 18-21"). The post-testimony record cannot be considered, because the Supreme Court has held that the January 7, 2019 decision must be considered by the federal courts in the context of the record and law existing at the time the decision was made, not afterwards. Greene v. Fisher, 564 U.S. 34, 38 (2011) (federal courts must limit their consideration of the constitutionality of a decision to the facts of record and law of precedent at the time the decision was made). The 15 page brief which the R&R refers to was not in support of Petitioner's request to proceed pro se: it was a motion for new trial, ECF 12.47.

11

16.) The R&R cites heavily to findings by the Trial Court about Petitioner's courtroom conduct; made on post-trial remand to conduct a hearing for self-representation on appeal, ECF 12.17, but federal law prohibits the consideration of these findings on review of the merits of a habeas petition. See Kimmelman v. Morrison, 477 U.S. 365, 389, 390 n.10 (1986). These post-trial findings are at odds with the pre-trial findings of "perfect gentleman", indeed with the pre-testimony record, and so they are not entitled to deference under 2254(e)(1). See Thomas v. Horn, 570 F.3d 105, 123-124 (CA3 2009) (ex post characterizations at odds with the record not entitled to deference); but cf. Saranchak v. Secretary, 802 F.3d 579, 594 (CA3 2015) (evidence within the record can meet the "clear and convincing" standard for 2254(e)(1); if it contradicts the state court's finding of fact).

17.) The R&R posits that "neither the trial court nor the Appellate Division had an opportunity to address the underlying Brady claim in the context of a pre-trial motion to dismiss"; yet this is proven wrong by both the record; ECF 1.7, ECF 12.7, P.55a-56a; and by Respondent's admission that all factual and legal claims were exhausted. ECF 12, paras 9, 13. Just because they didn't seize the opportunity, doesn't mean they didn't have one. See Dye v. Hofbauer, 546 U.S. 1, 3-4 (2005) (it is the brief of the petitioner, not the opinion of the state court, that is determinative of whether a federal constitutional claim is fairly presented); O'Sullivan v. Boerckel, 526 U.S. 838, 844 (1999)

12

("exhaustion doesn't require repetitive petitions"); Castille v. Peoples, 489 U.S. 346, 350-351 (1989) (Claims raised on direct appeal are exhausted even if state appellate court ignores those claims); Smith v. Digmon, 434 U.S. 332, 333 (1978) (State Court opinions are irrelevant to exhaustion, Petitioner's briefs are determinative); Holloway v. Horn, 355 F.3d 707, 715-716, 718 (CA3 2004) (A petitioner can exhaust his claim by presenting factual and legal basis in pro se brief); Clark v. Pa., 892 F.2d 1142, 1146 (CA3 1989) (State Court opinions are not determinative of that court's opportunity to address claims, federal courts look to Petitioner's briefs); Bond v. Fulcomer, 864 F.2d 306, 309 (CA3 1989) (Same); Gonce v. Redman, 780 F.2d 333, 336 (CA3 1985) (Same). The R&R's raising of an adverse inference motion in a subnote risks conflating the issue, but Petitioner posits that Brady was not applied, so any result on that adverse inference motion was contrary to clearly established precedent, for all the reasons set forth in ECF 48.

18.) The R&R mischaracterizes the Reply, a pleading under Fed. R. Civ. P. 7(a)(7), as a "reply brief", and summarily ignores it thereafter. This is clear error and manifestly unjust, as it deprives Petitioner Due Process in the consideration of the allegations in all of his pleadings in this matter.

19.) The R&R's contentions that the summary judgment motions are duplicative of the Petition, and that they should be denied, are both clear error and manifestly unjust. Plaintiff has filed statements of material facts not in dispute with both motions.

13

See ECF 15, 44. The Respondent's failure to file responsive statements of material fact, deems each fact in Petitioner's statements admitted. See Saab v. Zambelli Fireworks Mfr'g Co., 2021 U.S. Dist. LEXIS 32071 at *2 (W.D. Pa. 2021) (C.J. Hornak). Because these admissions cut to the core of numerous contentions applying law to the facts, and because judicial economy would be preserved by use of summary judgment on these undisputed facts instead of discovery or evidentiary hearing, it is clear error and manifestly unjust to deny Petitioner's SMJ motion, for all the reasons set forth in the SMJ Motion.

## D. Applicable Legal Standard

20.) The R&R's application of 2254(d) to Petitioner's claims, and to the case law in support of that application; are error for all the reasons in Point II of his Memorandum; and Point II of his Reply.

21.) The R&R's carte blanche application of 2254(e)(1) to all state court factual determinations is erroneous, as post-trial factfinding by the Trial Court is not entitled to deference. Petitioner also sets forth the legal argument from his Reply; See ECF 16, P.14-16, Standard of Review "B": as applied to the State Court's factfindings in ECF 16, P.29-30 on Ground One; and as applied to the factfindings in ECF 16, P.40-48 on Ground Two.

22.) The R&R's seeming placement of the burden of proof on Petitioner for the issue of procedural default is erroneous, which burden is properly on the Respondent,

14

### E. Analysis

### 1. Statute of Limitations

23.) The R&R doesn not make findings on the exhaustion of the factual and legal grounds raised in the Petition, which Respondent has admitted to full exhaustion thereof in their Answer. See ECF 12, paras 9, 13.

### 2. Procedural Default

24.) The R&R does not make findings or holdings of law on the issue of procedural default. Respondent has the burden to plead and prove the adequacy and independence of state procedural grounds, and they have failed to do so. Although the R&R purports to sidestep the analysis by finding Petitioner's claims without merit, the merits analysis is predicated largely on consideration of state procedures which are neither named nor analyzed in the light of their adequacy. Both the refusal to address fully the procedural default issue, and the finding of lack of merit, are objected to as erroneous and manifestly unjust. The R&R doesn't take into account the Reply, the Memorandum, the SMF-SMJ Motion, nor the SMJ Motion. Petitioner incorporates by reference his facts and arguments from Points II and III of his Memorandum; ECF 2, P.11-13; his facts and arguments from Points I and II of his Reply; ECF 16, P.16-25; and Point II from his SMJ Motion; ECF 44, P.19-22; and sets forth same herein in support of this objection.

15

## 3. Merits

25.) The initial preamble to this section mischaracterizes Petitioner's December 27, 2018 filing as only constituting a motion to dismiss. As alleged in the Petition and iterated in "12" above, Petitioner had filed a certification under penalty of perjury, and a notice, in which he had specifically indicated in writing that he chose to proceed pro se. Petitioner again indicated verbally, under oath at the January 7, 2019 hearing, that he invoked his 6th Amendment Right to self-representation; and indicated that it applied to both his Brady motion, and also to his case in general. The reliance on ex post facto stated perceptions of the trial court is belied by the trial court's deletion of docket entries clearly evincing written requests by Petitioner to dispense with counsel and proceed pro se. See ECF 12.7, P.55-56a. The finding of his request being procedurally improper is erroneous for all the reasons given in Petitioner's Reply, the allegations of which were refused a liberal construction, or any citation at all, by the R&R, which refusal is also erroneous and manifestly unjust. See Reply, generally.

### a. Ground One

26.) Preliminarily, the R&R doesn't cite to or consider the factual or legal contentions in the Reply concerning Ground One, and this is erroneous and manifestly unjust. See ECF 16, Point III, P. 25-31; incorporated by reference and set forth herein. This is particularly concerning, in light of the circuit split which the R&R urges the District Court to part ways with the 3rd

16

Circuit on. See ECF 12.25 (Petition for Certiorari to USSC, listing conflicting decisions from numerous circuits on this very issue), incorporated by reference and set forth herein.

27.) The R&R's citations to cases in which the right to self-representation have been waived by susbsequent conduct are distinguished from this case, in that they involve situations factually distinct: in each of those cases, the petitioners had already been allowed to proceed pro se.

28.) The R&R's citation to 2nd, 5th, and 11th Circuit cases allowing for waiver by acquiescence is at odds with 3rd Circuit binding precedent, and must be overruled for reasons of stare decisis. In support of his objections to waiver by acquiesence, Petitioner incorporates by reference Point III from his Reply. See ECF 16, P. 25-31.

29.) The R&R's conclusions that Petitioner's 6th Amendment claim is deficient are erroneous for all the reasons given in Point III from his Reply. See ECF 16, P. 25-31.

30.) The R&R's analysis of the clarity and unequivocality of Petitioner's request to self represent is erroneous for multiple reasons. First, doesn't account for the written notice, and written certification under penalty of perjury, both expressing his specific indication that he chose to proceed pro se. See ECF 1, P.8 ("He clearly indicated in his moving papers that he chose to proceed pro se"), P.11 (same). The Respondent has admitted in the docket report appended to their answer, that they have deliberately deleted this notice and certification, and have not

produced copies of same. See ECF 12.7, P.55-56a. In this light, his ore tenus motion under the 6th Amendment was a proffering of the content of those requests onto the record, and was fully compliant with NJ Procedural Rules for doing so. See N.J.C.R. 1:6-2(a). Even if it weren't, mere formal requirements are not sufficient to excuse the trial court's failure to inquire as to the scope of Petitioner's request: once he said "I assert my 6th Amendment Right ... pro se to argue my case"; he had invoked the right created by Faretta. See Lee v. Kemna, 534 U.S. 362, 366, 385 (2002) (mere formal requirements are not sufficient to bar habeas relief, when claim has been raised in substantial compliance with essential requirements); Osborne v. Ohio, 495 U.S. 103, 124 (1990) (once the request was "clearly explained" to Petitioner as denied, a requirement to raise his request a 2nd time is an arid ritual of meaningless form); James v. Kentucky, 466 U.S. 341, 351 (1984) (defects in form are insufficient to render constitutional claims unexhausted, when petitioner sought to invoke the substance of these claims in state court); Huffman v. Florida, 435 U.S. 1014, 1015 (1978) (oral motions in open court are effective when made); United States v. Peppers, 302 F.3d 120, 133 (CA3 2002) (requests to self-represent can be oral or in writing). The very case cited in the R&R as prohibiting hybrid representation, specifically enumerates the right to file motions as part of the 6th Amendment Right created by Faretta. See McKaskle v. Wiggins, 465 U.S. 168, 174 (1984) (Including under rights created by Faretta: "organization and content of

18

defense, making pre-trial motions, arguing points of law ... and addressing the Court"). Likewise, the R&R's position that the request was "ambiguous" or that "the trial court expressly interepreted as such" fall flat in the face of the context: the written certification and notice clearly indicating an intent to proceed pro se in all aspects of the case. The R&R's citation to other circuits in support of its position flouts 3rd Circuit binding precedent at odds with those circuits in a circuit split. Finally, Petitioner incorporates by references his factual and legal allegations regarding this analysis, from Point III of his Reply; See ECF 16, P.4-6, P.25-31.

31.) The R&R's statements that "at no point during the remainder of that hearing, or, indeed, throughout the subsequent pretrial proceeedings and the trial itself, did McGillvary make any attempt to clarify or correct the trial court's interpretation of his request"; "Nothing in the record supports McGillvary's claim that his focused remarks about his pro se motion cloaked a broader intent to take the drastic step of firing his attorney and representing himself at trial"; and "a careful review of the complete record reinforces this conclusion": are erroneous for several reasons. Factually, it does not account for the 2 subsequent times within that same hearing that Plaintiff attempted to clarify or correct the trial court's interpretation, but was silenced by the trial court. Likewise, the footnote at 6 conflates Petitioner's post-testimony lodging of objections to the court, with his pre-testimony habit of refraining from

19

contradicting the trial court. In light of the record prior to taking the stand, Petitioner had demonstrated he was uncomfortable with contradicting the trial judge, and was called a "perfect gentleman" who "comporteted himelf lucidly" and "cooperatively". See ECF 12.35, P23L18-21; See also Greene v. Fisher, 564 U.S. at 38 (federal courts must limit their consideration of the constitutionality of a decision to the facts of record and law of precedent at the time the decision was made). It wasn't until the trial judge had made himself an active participant in the cross examination of Petitioner, that Petitioner had ceased to view him as a neutral arbiter and began to lodge objections freely. And the examples given by The R&R of Petitioner's "two subsequent occaisons" in which he asserted his Faretta rights, cuts to the core of their argument: in both instances, Petitioner first filed documents evincing his written intention to dispense with counsel and proceed pro se. In both instances, he thereafter moved ore tenus on the record to renew his request. In light of this habitual recurrence at each subsequent stage of the proceeding, it's abundantly clear that his pre-trial request to proceed pro se was accompanied by a written statement of his intention to do so, which was subsequently deleted by the trial court. See ECF 12.7, P.55-56a (trial court deleted notice and certification in support); but cf. Buhl v. Cooksey, 233 F.3d 783, 792 (CA3 2000) (Petitioner isn't required to submit a written request to self-represent, nor to conform his request to formal requirements); Id. at 796, 803

(once his request was clearly denied, Petitioner was under no obligation to renew his request). The only difference, is that Petitioner's knowledge of the law increased after he was able to liberally access the  superior law library facilities in Essex County, after conviction; compared to the paltry facilities which he was often unable to access in Union County, prior to conviction. The R&R seems to recognize the imposition of a "talismanic formula" requirement by contrasting his remarks after the benefit of 6 months of legal education, and again after 18 months of legal education, with that of his neophyte request on January 7, 2019. Finally, the legal basis of the R&R's contentions is unsound, as it relies on the wrong side of the circuit split to that taken by the 3rd Circuit on the issue of waiver by acquiescence. See ECF 12.25 (examples of split). All of the R&R's contentions are objected to for the reasons given in the Reply; ECF 16.

32.) The R&R's reliance on cases involving vacillation or acceptance of counself is erroneous for several reasons. First, the 3rd Circuit cases are distinguished by not involving written expressions of intent to proceed pro se filed and deleted from the docket, accompanied by ore tenus invocations of the 6th Amendment right to proceed pro se. Second, the 3rd Circuit cases are distinguished by involving vacillation or acquiescence **after** the Faretta right has been respected and standby counsel appointed. Third, the R&R cites to cases from other circuits, who are in a circuit split with the 3rd Circuit, and who espouse

standards contrary to 3rd Circuit binding precedent. See Buhl, 233 F.3d 783, generally (cooperation with defense counsel after request is denied cannot constitute acquiescence or vacillation); Id. at 793-794, 801 (cooperation with a trial court or affirmative answers to trial court's questions cannot constitute vacillation nor acquiescence, because it doesn't alter the trial court's obligation to conduct a Faretta inquiry); Id. at 796, 803 (once his request was clearly denied, Petitioner was under no obligation to renew his request). Lastly, Petitioner objects to the R&R's analysis of acquiescence or vacillation for all the reasons in his Reply, which wasn't duly considered by the R&R. See ECF 16; See also Id. at P.25-31.

33.) The R&R misstates the record, and makes erroneous findings of fact and law with respect to Petitioner's subsequent conduct after his request to proceed pro se. The statement "After he informed the court that he wanted to argue his motion to dismiss 'pro se', McGillvary accepted the Court's suggestion that he confer with his attorney and refile the motion with the assistance of counsel"; and what follows; conflates two separate incidents, omits a third, and mischaracterizes them all. Namely, Petitioner requested to litigate his motion pro se AND to argue his case pro se; See ECF 12.34, P4L3-5; the judge therafter expressed extreme displeasure and denied his motions, written and ore tenus, in which Petitioner had stated his intention to proceed pro se in all aspects of his case; See Id. at P.4-6; Petitioner then tried to address the Court again but was

22

silenced; See Id. at P19L14-15; and when he again addressed the Court, stating that he wished to proceed pro se in all aspects of his case and to request a pre-trial evidentiary hearing on his Brady motion, the Court went off the record for exactly 1 minute, then allowed the illegitimate counsel to mischaracterize what was said by Petitioner in open court, under oath. See Id. at P21L12-25.

34.) The R&R's conclusion for Ground One contradicts 3rd Circuit binding precedent, misstates the facts, and arrives at an unjust result. Petitioner's going to trial "uncomplainingly" after his numerous attempts to self-represent, written and oral, had been conclusively denied, cannot act as a bar to habeas relief: 3rd Circuit precedent doesn't require trial in absentia, nor for the Petitioner to raise his requests continually. See Buhl, 233 F.3d 783, generally. Likewise, a finding that his request wasn't clear or unequivocal does not account for the context of his written notice and certification accompanying the request. For all the reasons in Petitioner's Reply, incorporated and set forth herein, Petitioner objects to the R&R's conclusion on Ground One.

### b. Ground Two

35.) Preliminarily, the R&R does not cite to or consider the factual or legal contentions in the Reply concerning Ground Two, and this is erroneous and manifestly unjust. See ECF 16, generally; See also Id. at Concise Statement of the Case, P.1-13; Standard of Review, P. 13-16; Point II, P. 21-25; Point IV, P.31-49; incorporated by reference herein. The R&R also does  not cite

to or consider the SMF-SMJ Motion; which are deemed admitted by
Respondent's failure to file a responsive statement; ECF 46; see
also D.N.J. L. Civ. R. 56.1(a) (any statement not adressed in a
responsive statement of facts is deemed admitted); nor does it
consider the arguments set forth in the SMJ Motion papers
incorporated by reference and set forth herein.

36.) The R&R's preamble to the merits report on Ground Two
mischaracterizes the issue of the Brady Claim: as stated in the
point heading in the Petition for Ground Two, Petitioner claimed
a constitutional violation in the order denying him relief on his
Brady claim, not simply the striking of the motion from the
record. The trial court based this denial on a procedural ground,
namely the nebulous "court rules"; but there has been no showing
of adequacy or independence of those grounds, and it is a denial
nonetheless. And in fact, the case cited by the R&R in support of
the trial court striking the pro se motion, actually cuts to the
heart of the constitutional violation: it held that the right to
self representation encompasses "making pre-trial motions"; See
McKaskle, 465 U.S. at 174. So rather than assuming Petitioner had
intended a "hybrid representation"; the R&R should instead have
considered the allegation that "he clearly indicated in his
moving papers that he chose to proceed pro se"; ECF 1, P.4, 11;
in the light of his ore tenus request; Ibid.; and the
Respondent's admission that the notice and certification in
support thereof was deleted; ECF 12.7, P.55-56a. The R&R's report
that "McGillvary failed to raise his Brady claim in a

24

procedurally appropriate motion, the trial court did not err in failing to consider the merits of that pro se claim"; and its sequelae; are in error: Petitioner has specifically alleged compliance with the procedures making his motion proper in his Reply. See ECF 16, P.1-4; Id. at Point I, P.16-21; But cf. Lee v. Kemna, 534 U.S. at 384 (when a rule's essential requirements are met, formal requirements are not adequate to bar habeas relief). The Trial Court's failure to consider the merits of his Brady claim was constitutional error, and mere formal requirements do not suffice to provide adequate procedural grounds. Ibid. The R&R's sidestepping of the procedural default analysis renders this contention deficient, erroneous, and manifestly unjust; as the Respondent has made no showing of the adequacy and independence of any procedural grounds. See Johnson v. Lee, 136 S. Ct. 1802, 1805 (2016) (whether a state procedure is adequate is a matter of federal law); Beard v. Kindler, 558 U.S. 53, 60 (2009) (same); Nara v. Frank, 488 F.3d 187, 199 (CA3 2007) (state procedural rule is adequate and independent if (1) it speaks in unmistakeable terms, (2) all state courts refuse to hear the claim on the merits, and (3) the refusal is consistent with other state decisions; the State bears the burden of proving adequacy and independence). Additionally, whatever the Trial Court's reason for failing to adjudicate the Brady Claim, the Appellate opinion superseded it as the last reasoned state court opinion, and its reasons weren't sufficient to state an adequate and independent procedural ground. See Thomas v. Horn, 570 F.3d at

115.  The R&R does not cite what procedure the motion was supposedly deficient in, or to indicate what would make the motion "procedurally appropriate" as a matter of federal law. Plaintiff nonetheless raised the Brady claim through one full round of appellate review, by incorporating by reference the brief attached as Exhibit A to the Petition in his appellate brief, as Respondent admits in their Answer. See ECF 1.7 (Brief raising factual and legal grounds of Brady claim); ECF 12, paras 9, 13 (Respondent admits that the factual and legal basis for Brady claim exhausted through one full round of appellate review). Petitioner also sets forth herein his SMF-SMJ Motion and SMJ Motion in support of this objection.

37.) The R&R's report that Petitioner's Brady claim "lacks merit" is erroneous and manifestly unjust for many reasons, not least of which is its contradicting the law of the case in regards to the Petition alleging a Brady violation on its face; See "2" above. The R&R contends the allegations of the pleadings are  deficient for not "citing to the record" or "producing evidence in support"; despite the record being produced in the Respondent's Answer 9 months later; See ECF 12; and Petitioner subsequently filing a Reply, which the R&R completely ignores in relation to Ground Two; See ECF 16; see also Fed. R. Civ. P. 7(a)(7) (a reply is a pleading).

38.) The R&R mischaracterizes Petitioner's Brady claim, stating "the core of his contention is that the investigating police officers failed to properly investigate and secure the crime

26

scene, causing potentially exculpatory evidence to be lost or destroyed"; and misquoting Petitioner's testimony. The R&R makes no attempt at findings on the cumulative materiality of the Brady evidence cited heavily to in the Reply. See ECF 16, P1-13, P.31-48; nor on the contentions of fact and law in the SMF-SMJ Motion or the SMJ Motion. There were numerous other items of evidence destroyed or withheld by investigators, that Petitioner was entitled to a pre-trial evidentiary hearing to both discover and have considered in support of his Brady Claim; See ECF 44. Video Surveillance from NJT, bribes paid from the brother of the rapist to investigators and witnesses, conflict of interest of the first responding officer, were all in addition to investigating and securing the crime scene. Ibid. Petitioner didn't testify that the alcohol made him pass out, he stated that there was a metallic taste, which indicated that a drug with a metallic taste **within** the beverage made him pass out. The mischaracteriztion of Petitioner's Brady claim in the R&R leaves out vast swathes of evidence from the Reply; the SMF-SMJ Motion; and the SMJ Motion; and all of the contentions raised therein, in connection with that evidence.

39.) The legal standards set forth in the R&R in its analysis of the materiality prong of the Brady claim do not account for or apply the standards set forth in the Memorandum; the Reply; the SMF-SMJ Motion; or the SMJ Motion; to the facts set forth in those filings; and properly alleged within the Petition and the Reply: which failure is error and manifestly unjust.

27

40.) The R&R's report that "there is no question that the
evidence targeted in McGillvary's petition was, at most,
potentially exculpatory"; and its sequelae in that analysis; is
erroneous and manifestly unjust: in light of the photographic and
other evidence attached to the Petition; and the evidence
referred to in the Petition, the Reply, and the SMF-SMJ Motion;
from which it can be inferred from the conduct of the
investigators in destroying it that it was exculpatory, when
taken in the light of the investigators' conflict of interest.
See, e.g. SMF-SMJ Motion (First Responding officer, in charge of
the crime scene, was law client of the rapist).

41.) The R&R does not apply the standards set forth in the
Memorandum, the Reply, and the SMJ Motion; to the facts contained
in each of those filings and the SMF-SMJ Motion; and properly
alleged in the Petition and the Reply: in its analysis of the bad
faith prong of the Brady analysis.

42.) The R&R's analysis based on "A careful review of his papers
and the record" purporting to find that "McGillvary has failed to
meet this burden" of bad faith; is erroneous and deprives
Petitioner of Due Process in consideration of the allegations
set forth in his Reply pleading. It does not account for the
facts set forth in his SMF-SMJ Motion; nor does it apply the
correct standard to those facts, from the Memorandum, the Reply,
and the SMJ Motion. The R&R's contentions that the Petition
itself does not allege bad faith, conflicts with the law of the
case as set forth in "2" above. State of mind, such as bad faith,

which is a form of knowledge, can be alleged generally in an initial pleading. See Fed. R. Civ. P. 9(b). Petitioner went beyond this, and cited to evidence showing bad faith, in his brief attached as Exhibit A to his Petition and incorporated by reference therein; ECF 1.7; but the R&R does not address any of the incorporated allegations in its analysis. Petitioner was thereafter provided with the record pursuant to Habeas Rule 5(c), (d), and this Court's December 2, 2022 order; ECF 6; which order also permitted Petitioner to file a Reply. See Fed. R. Civ. P. 7(a)(7) (a reply, when a court orders one, is a pleading). Petitioner's Reply is chock full of allegations of fact, which refer to specific places in the record where evidence to support his allegations of bad faith are found. See ECF 16, generally. Although Petitioner had initially moved for discovery and an evidentiary hearing to develop further evidence of bad faith, he was able to develop that evidence through a civil rights lawsuit instead, and moved for summary judgment, since the Respondent was a party to that lawsuit and did not contest the authenticity, admissibility of the evidence, or the fact that it was a public record and therefore judicially noticeable. See SMF-SMJ Motion; F.R.E. 201(b). Petitioner stated that the evidence was judicially noticeable pre-trial evidence, and that Habeas Rule 7 permitted expansion of the record to include it, in his SMF-SMJ Motion. Respondent failed to file a responsive statement of material facts; ECF 46. All of the evidence of bad faith, and the application of the law to the facts alleged in Petitioner's SMF-

29

SMJ Motion, are therefore deemed admitted by Respondent; and the R&R's analysis does not apply the correct standard to any of those facts. See D.N.J. L. Civ. R. 56.1(a). The R&R's statements that "his allegations in this regard are entirely conclusory"; "offers only the unsupported averment"; "He similarly opines, without support"; "none of these averments are supported by citations to the record or evidence of bad faith"; and the findings which they appear within, are erroneous and contrary to law for these reasons.

43.) The R&R's report that "Nor is McGillvary entitled to an evidentiary hearing on this claim"; and the analysis that follows; applies the wrong standard to facts which are less than all of the facts, and neglects the facts pleaded in the Reply and the SMF-SMJ Motion; as shown by the Memorandum, the Reply, and the SMJ Motion. The reliance on Shinn v. Ramirez, 2022 U.S. LEXIS 2557 (2022) is inapposite, as that case was decided after Petitioner's Petition was filed, and was not made retroactive. See Greene v. Fisher, 564 U.S. 34, 38 (2011) (federal courts must focus on the law and precedent at the time the decision was made). And even if it did, Shinn specifically holds that 2254(e)(2) does not apply when Petitioner is not at fault for failure to develop the record in state court; Shinn, 2022 U.S. LEXIS 2557 at *24; which he has shown in his Reply; ECF 16 at P.3, 4-5, 9-10, 49-52; and in his brief in support of his motion for evidentiary hearing and for discovery; ECF 1.6. Likewise, the cases cited in the R&R do not take into account, nor are they

properly applied to, the allegations in the Reply, which Petitioner is entitled to liberal construction of. See ECF 16, generally; Id. at Point V, P.49-52. Additionally, the R&R does not mention, much less consider, the factual contentions or arguments set forth in Petitioner's Brief in Support of his motion for discovery and evidentiary hearing; ECF 1.6, incorporated by reference and set forth herein.

44.) The R&R's heavy reliance on Gardner's testimony, and analysis of the Bad Faith prong in light of it, is error for all of the reasons set forth in the Reply and the SMJ Motion. The R&R leaves out crucial parts of her testimony; and all of Detective Ho's, Cheryl Kestlinger's, and Monica Ghannam's testimony: in which they each indicated the investigators' knowledge of the exculpatory value of evidence at the time it was destroyed. See ECF 16, P.6-9, P.36-48. The Crime Scene expert's testimony, which actually provided evidence that police training and habitual practices common to all police officers made it extremely unlikely that investigators didn't recognize the exculpatory value of the evidence they destroyed, or of analysis of that evidence: was mischaracterized by the R&R. See ECF 16, P.9; F.R.E. 406 (evidence of an organization's routine practice can prove deliberate and knowing state of mind of organization's agent, if routine practice is unusually deviated from in specific instance). Additionally, the Respondent has admitted to the state of mind and the bad faith of investigators in their failure to respond to Petitioner's SMF-SMJ Motion filed with his SMJ Motion,

which obviates the need for discovery or an evidentiary hearing on the bad faith prong of the Brady Claim. Similarly, the R&R's contention that "there is simply nothing in the record to suggest the type of bad faith required by Trombetta and Youngblood. This deficiency is fatal to his claim" is erroneous for these reasons.

## 4. Certificate of Appealability

45.) The R&R's findings "that jurists of reason would not find it debateable whether each of McGillvary's claims should be denied for the reasons given herein. Accordingly, a certificate of appealability should be denied"; and the standards and application of those standards to facts upon which it's based; are erroneous for all the reasons given in "5" above; the Petition, the Memorandum; the Reply; the SMF-SMJ Motion and the SMJ Motion.

46.) Petitioner additionally, in the abundance of caution, objects to any findings that any of the foregoing were not before the Magistrate Judge for his consideration, as each averment herein appears on the docket at the time of ECF 55 being entered onto the docket; and because the R&R specifically indicates it was based on "a thorough review of the record"; Id, at P.19, n.6; "A careful review of the complete record"; Id. at P.20; and "A careful review of [Petitioner's] papers and the record"; Id. at P.26.

## III. The R&R Doesn't Address the Motion at ECF 52, 53

47.) This Court ordered that the magistrate address all motions filed after the referral, ECF 45. Petitioner thereafter filed a

motion to advance the cause at ECF 52, 53. The R&R does not address the facts or arguments contained in this motion.

## CONCLUSION

For all the foregoing reasons, Petitioner objects to the R&R; and requests de novo review of each of these objections and the Pleadings and Papers on file in this matter by the District Court.

Date: 11/14/24

Respectfully submitted,

Caleb L. McGillvary, Pro Se

#1222665/SBI#102317G NJSP

PO Box 861 Trenton, NJ

08625-0861

## CERTIFICATION OF PETITIONER

This document is 33 double-spaced pages, exclusive of Tables of Contents and Authorities and of Certifications, and is prepared using 12 point courier **monospaced** font. It is therefore prepared in accordance with D.N.J. L. Civ. R. 7.2's requirements.

Date: 11/14/24

_____

Caleb L. McGillvary, Pro Se

#1222665/SBI#102317G NJSP

PO Box 861 Trenton, NJ

08625-0861

# EXHIBIT A

Caleb L. McGillvary, Pro Se
#1222665/SBI#102317G NJSP
PO Box 861 Trenton, NJ 08625


UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| Caleb L. McGillvary ) | CIVIL ACTION NO. |
|     PLAINTIFF ) | 1:22-cv-04185-MRH |
| ) | |
|     V. ) | Hon. Mark R. Hornak, USDJ |
| ) | Hon. Richard A. Lanzillo, USMJ |
| Bruce Davis, Administrator ) | Motion Date: September 16, 2024 |
| NJSP, Attorney General of NJ ) | |
|     DEFENDANT ) | |
| ) | |


STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

Pursuant to Fed. R. Civ. P. 56 and DNJ L. Civ. R. 56.1, pro se petitioner Caleb L. McGillvary (Petitioner) submits the following statement of material facts not in dispute.

All exhibits and statements referenced herein are annexed to the accompanying declaration of Petitioner Caleb L. McGillvary.

Plaintiff incorporates his statement of material facts not in dispute from ECF 15.6, and sets forth same herein.

1.) The Notice of filing attached as P.1 to Exhibit A of the Petition for Habeas Corpus in this matter is a true and accurate copy of the Notice of filing filed by the Clerk of the New Jersey Superior Court on December 27, 2018. See ECF 1.

2.) The Notice of filing referred to in "1" above indicates there was no deficiencies in the motion to dismiss the indictment filed by Petitioner on December 27, 2018. The State Court Docket shows that the notice of motion to dismiss the

1

indictment filed by Petitioner on December 27, 2018 was accompanied by a proposed form of order, proof of service, certification/affidavit, and brief; which were each and all deleted by order of the trial judge, Robert A. Kirsch, on January 10, 2019. ECF 12.7, P55a-56a

3.) The brief attached as Exhibit A, and the exhibits filed in support thereof attached as Exhibits E-L, to the Petition for Habeas Corpus in this matter are true and accurate copies of the brief and attached certified exhibits in support of the motion to dismiss the indictment filed by Petitioner, which raised a claim under Brady v. Maryland, 373 U.S. 83, 87 (1963). See ECF 1.7, 1.11-1.18.

4.) Plaintiff set forth in his brief described in "3" above that the NJ Attorney General's Guide to Providing Services to Victims of Sexual Assault (AGVSA); was judicially noticeable regulation mandating procedure for investigators at crime scenes involving sexual assault during the period from May 13-16, 2013; and that the Drug Enforcement Agnecy's Drug Fact Sheets; were judicially noticeable public records showing the effects of GHB and Ketamine caused amnesia and memory impairment. ECF 1.7; See also ECF 1.12 (DEA Drug Fact Sheets).

5.) The transcript of the January 7, 2019 proceeding shows Plaintiff's sworn statement in open court: "I assert my 6th Amendment right to litigate my motion pro se, and I have requested pro se to argue my case." See ECF 12.34, P4L3-5

6.) Plaintiff's ore tenus motion described in "5" above specifically referenced and renewed his pro se motion to dismiss the indictment, raising a claim under Brady v. Maryland, 373 U.S. 83, 87 (1963), described in "1"-"3" above; and complied with all the essential requirements of N.J.C.R. 1:6-2(a): it was made in open court, it described the relief sought, and it stated the grounds for relief.

2

7.) The State Court denied Plaintiff's motion resting solely on procedural grounds, with no alternative adjudication on the merits; but failed to cite which Court Rule was being invoked or to make any showing of its adequacy or independence.

8.) Plaintiff tried again twice during the January 7, 2019 hearing in open court to address the Court and renew his request for an evidentiary hearing on his motions, but was silenced by the Court both times. On the third attempt Plaintiff made, the Court went off record for exactly one minute, and the record shows that during that time, Petitioner attempted to introduce drug effect expert testimony in support of his motion to dismiss the indicitment. See ECF12.34, P19L14-15, P21L12-25.

10.) The letter attached as Exhibit A to the declaration in support of this motion is a true and accurate copy of the letter Respondent sent to Petitioner's counsel on March 23, 2016.

11.) The letter described in "10" states that the drug effect expert Robert Pandina stated to Respondent, prior to Petitioner's December 27, 2018 motion, "that the immediate or acute effects of date rape drugs typically last between two to four hours, that residual effects can last longer (dependent on other factors such as dosage), and that the window of detection is eight to ten hours". Pandina also indicated that his workplace received funds from the estate of Joseph Galfy within the year leading up to the letter, and after he had been retained by the Respondent to provide testimony. In this letter, Respondent indicates that this action by the estate of Joseph Galfy created a conflict of interest.

12.) The letter described in "10" is judicially noticeable as filed in the US District Court for the District of New Jersey as Exhibit A to ECF 1.3 in McGillvary v. Galfy, Dkt. No. 2:21-cv-17121-MCA-CLW; or in the alternative, the Court may expand the record under Habeas Rule 7 to include it. Respondent was a party in that case and did not object to or oppose the authenticity or

3

admissibility of the document. The letter was in existence prior to the December 27, 2018 motion and request for evidentiary hearing, and could have been proferred at that hearing if the hearing was conducted as requested, and constitutes pre-trial evidence.

13.) The Check attached as Exhibit B to the declaration in support of this motion is the same as that attached as Exhibit B to James Galfy's declaration filed in support of his motion to dismiss; ECF 43.2 in McGillvary v. Galfy, Dkt. No. 2:21-cv-17121-MCA-CLW (USDC-DNJ); and is judicially noticeable as being filed in that case; or in the alternative, the Court may expand the record under Habeas Rule 7 to include it. Respondent was a party in that case and did not object to or oppose the authenticity or admissibility of the document. The check was in existence prior to the December 27, 2018 motion and request for evidentiary hearing, and could have been proferred at that hearing if the hearing was conducted as requested, and constitutes pre-trial evidence.

14.) Adrian Gardner was an investigator at the crime scene at 46 Starlite Drive, Clark, NJ in the state criminal matter underlying this habeas action.

15.) On April 9, 2019, Adrian Gardner testified that, while the crime scene at 46 Starlite Drive Clark, NJ was supposed to be secure, an unidentified male broke the crime scene tape, entered the crime scene, and removed a bag of evidence from the scene. She admitted that the person was not authorized to enter the scene, nor to remove evidence, and that she had no idea what he did in the crime scene; nor what he removed from the scene. There is no record of what was in the bag. ECF 12.38, P168L3-P170L15. Gardner also testified that she did not collect the glasses from the dishwasher or the kitchen. Id. at P139L12-P141L3; that she did not collect samples of the capret despite it appearing to be covered in evidence; Id. at P143L8-P144L14; and that she did not at any point look inside pill bottles from the fridge to ascertain their contents; Id. at P152L11-P153L3. She admitted that investigators

4

were aware of the exculpatory nature; Id. at P138L14-P139L11; of analysis of the glasses and containers from the kitchen; Id. at P113L17-P114L18, P117L7-22; Pill bottles from the house; Id. at P156L16-21; and surfaces upon which the sexual assault was alleged to have occured; Id. at P114L19-P115L8; at the time such evidence was lost or destroyed. Finally, Gardner testified that bloody footprints indicated that Petitioner's "Pants fabric was under the heel of the foot." ECF 12.38, P108L22-P109L8

16.) On April 9, 2019, Clark Police Department Officer Keith Meehan, who was the first responder to the crime scene at 46 Starlite Drive Clark, NJ; testified that Galfy was found laying facedown on the carpet; See ECF 12.38, P45L13-17 ("Upon getting to the entrance of what I believe was the master bedroom, I looked inside at the entrance and I saw who was later identified as Joseph Galfy laying face down on the floor"); and there was no furniture in disarray to suggest he ahd been kicked in the face with enough force to send him flying backwards into furniture; Id. at P69L14-16 (The furniture was not disturbed). Meehan stated that he arrived at the crime scene at around 12:26pm on May 13, 2013. P40L11-P41L6.

17.) Dr. Junaid Shaikh was the medical examiner who conducted an autopsy on Joseph Galfy at Shaikh's workplace, the University of Medicine and Dentistry of New Jersey (UMDNJ), on May 14, 2013.

18.) The autopsy report submitted as Exhibit S-225 at trial by the Respondent indicates that the brother of Joseph Galfy, James Galfy, attended the autopsy and identified Joseph Galfy in the presence of Junaid Shaikh, and thereby personally met Junaid Shaikh at his workplace, the UMDNJ. See ECF 12.39, P14L2-14 (Shaikh authenticates report); See also ECF 12.7 (Autopsy Report, on Da42a of Defendant's Appendix, states verbatim "The body was identified by James Galfy")

19.) The last will and testament of Joseph Galfy attached as Exhibit C to this motion is the same as that attached as Exhibit

A to James Galfy's declaration filed in support of his motion to dismiss; ECF 43.2 in McGillvary v. Galfy, Dkt. No. 2:21-cv-17121-MCA-CLW (USDC-DNJ); and is judicially noticeable as being filed in that case; or in the alternative, the Court may expand the record under Habeas Rule 7 to include it. Respondent was a party in that case and did not object to or oppose the authenticity or admissibility of the document. The will was in existence prior to the December 27, 2018 motion and request for evidentiary hearing, and could have been proferred at that hearing if the hearing was conducted as requested, and constitutes pre-trial evidence.

20.) The document described in "19" above shows that James Galfy was named the executor of the Estate of Joseph Galfy, and that the document directs $150,000 to be paid to the workplace of Robert Pandina, the Rutgers University Center  for Alcohol Studies; and another $150,000 to be paid to the workplace of Junaid Shaikh, the UMDNJ.

21.) On April 10, 2019 Junaid Shaikh, the medical examiner who performed the autopsy on Joseph Galfy, testified that there were grab marks on Galfy's wrists. ECF 12.39, P50L3-P51L25. There were broken ribs and related brusing on the right side of Galfy's sternum consistent with a kick. Id. at P48L20-P49L6, P52L22-P54L13. Galfy had 3 neck fractures from his head being hyperextended backwards (as opposed to sideways or forwards). Id. at P43L8-P45L4. These fractures must have been caused by "significant force", much more force than what caused the grab mark bruising on the forearms, consistent with a kick to the face. Id. at P44L13-19. There were no grab mark bruises on the face, head, or neck. Id. at P19L25-P37L14. There were, however, 3 fractures to the skull; Id. at P37L15-P39L21; which were caused by a "significant impact to the face region"; Id. at P38L13-14, P39L16-21; See also  ECF 12.38, P45L13-17 (Galfy was found laying facedown on the carpet). Galfy's ear was torn by one injury with a linear force, which means that the force was horizontal, as opposed to vertically overhead. ECF 12.39,

6

P26L23-P27L8; See also ECF 12.42, P169L12-P172L7 (Petitioner was on his back on the carpet). The abrasion was caused by clothing fabric swiping across Galfy's ear; the abrasion could not be caused by rugburn. Id. at P23L22-P24L5; See also ECF 12.38, P108L22-P109L8 (Bloody footprints indicate Petitioner's "Pants fabric was under the heel of the foot"). There were no fractures to the skull in the area of the injury to the ear. Id. at P19L25-P39L21.

22.) On April 11, 2019, Monica Ghannam, a crime laboratory techinician, testified that the investigators in the state criminal proceeding underlying this habeas action submitted surface fabrics to the crime lab for analysis for blood and semen; and indicated knowledge of the potentially exculpatory nature of such analysis of fabric from surfaces upon which a sexual assault was alleged to have happened for blood and semen. ECF 12.40, P103L23-P105L20, P109L14-P113L9.

23.) On April 11, 2019, Cheryl Kestlinger, a crime laboratory techinician, testified that the investigators in the state criminal proceeding underlying this habeas action submitted pill bottles and containers from the crime scene, for the contents to be analyzed for drugs or drug residue;  and indicated knowledge of the potentially exculpatory nature of analysis of pill bottles and containers from the scene for drugs or drug residue. Id. at P153L18-P176L6. Kestlinger admitted that the investigators did not submit the pill bottles from the fridge for analysis of drugs nor drug residue. Id at P177L8-20; nor the glasses from the kitchen for analysis for drugs nor drug residue; Id. at P178L11-13.

24.) On April 16, 2019, Johnny Ho, a supervising Union County Prosecutor's Office investigator in charge of the crime scene at 46 Starlite Drive during the period from May 13-16, 2013, testified that he was required to follow the AGVSA. ECF 12.41, P117L3-14. Ho testified that the AGVSA mandatorily required him to collect a rape kit if a sexual assault was reported within 5 days of the assault. Id. at P102L2-9; and that Petitioner told him on

May 16, 2013 that he was assaulted on May 12, 2013, yet Ho did not collect a rape kit from Petitioner; Id. at P102L20-P103L10. Ho also testified that no one ever opened the pill bottles from the fridge to ascertain their contents; Id. at P114L16-P115L3; nor collected samples of the carpet visibly stained with evidence; Id. at P100L13-25; nor collected glassware in the dishwasher or the sink; Id. at P101L1-8. Ho also testified that he "obtained all other videos except for that two-hour period of time [at] Asbury Park"; Id. at P96L13-17. Ho admitted that the investigators stopped looking for DNA evidence as soon as a suspect was developed, despite knowing that Petitioner had stated he was sexually assaulted by Joseph Galfy; Id. at P129L1-10.

25.) The AGVSA mandates that investigators providing services to victims of sexual assault collect samples of the surface the sexual assault was alleged to have occured on.

26.) The AGVSA mandates that investigators providing services to victims of sexual assault collect samples of the containers from which the victim of a drug-facilitated sexual assault drank prior to the assault.

27.) The police report attached as Exhibit L to the habeas petition in this matter shows that an entry for the video surveillance from Asbury Park was created for the time period of 12:44pm onwards on May 12, 2024. ECF 1.18

28.) The described in "27" shows descriptions for every entry denoting a time period, except that the substance of the description for the time period of 12:44pm onwards on May 12, 2024 is missing.

29.) On April 17, 2019, Crime Scene expert Leonard Speckin was stipulated by the Respondent to be qualified; ECF 12.42, P15L19-P16L12. Speckin testified that proper police procedures required the investigators to remove the stained area of the carpet and bring it to the crime laboratory for analysis of the body fluids it evidently contained; Id. at P19L2-P20L23, P80L6-8; and to

collect the glassware and analyze it for residue of rape drugs; Id. at P20L24-P21L14, P79L9-22.

      30.) On February 8, 2018, prior to the start of trial, Robert Mega testified that he was a judge at the New Jersey Superior Court, Union County Vicinage - Criminal Division during May of 2013. ECF 12.32, P15L7-16. He stated that he was partners with Joseph Galfy, the alleged victim in this case, at the law firm Kochanski Mega & Galfy prior to acceding to the bench. P15L17-P16L1. Mega testified that a Clark Police officer called him around 12:30pm on May 13, 2013, and informed him of the circumstances of the crime scene. P17L13-20. Mega stated that the Clark Police officer who called him was a client of his and Galfy's. P17L18-20. The time of the call coincides with immediately after Clark Police officer Keith Meehan entered the crime scene, Meehan having arrived at the scene at around 12:26pm on May 13, 2013. P40L11-P41L6.

      31.) Richard DeCaprio stated to investigators during a video recorded interview on May 13, 2013 that Clark Police Officer Keith Meehan was a law client of Joseph Galfy's, the alleged victim in this case. DeCaprio stated that Meehan regularly had lunch with him at the local restaurant "Just Plain Dave's". DeCaprio was at the crime scene when Meehan arrived. DeCaprio's Video Recorded Interview was pre-trial evidence and this Court may expand the record to include it under Habeas Rule 7.

      32.) On April 17, 2019, Petitioner testified in his own defense. During his testimony, he stated that he cut his hair at the Asbury Park Transportation Center bathroom, using his pocket knife. Id. at P145L16-P146L7. He took the train back to Long Branch and called Galfy to ask for a place to stay. Id. at 150L24-P153L10. While he was at Long Branch, he made a call to Kim, leaving her a message indicating that he had made other arrangements for the night. A surveillance camera showed him with short hair, on the phone to Kim, during the very time the message indicated he had called her: from 5:11pm-5:13pm on May 12, 2013. Id. at P153L11-

9

P161L13; See also ECF 12.40, P25L25-P26L14 (Kim testified to a dropped call and voice message from Petitioner at 5:11pm on May 12, 2013). Petitioner went back to Galfy's house with Galfy, who made them both food and poured Petitioner's beer into a glass. ECF 12.42, P161L14-P168L13. After eating and drinking, Petitioner saw Galfy rinse the plates and put the dishes in the dishwasher, but Galfy did not run the dishwasher. Petitioner began to feel fuzzy aNd relaxed, then cannot remember anything until waking up on the floor of the master bedroom. Id. at P168L16-P169L7. Petitioner noticed Galfy over top of him, tugging on Petitioner's pants, and so Petitioner sat up abruptly and punched Galfy in the face. Id. at P169L12-L25. Petitioner blacked out after sitting up so fast, and the next thing he can remember is Galfy shoving Petitioner's head into the side of the bed, then frantically fighting his way out from under Galfy as Galfy slammed into him from over top and began writhing on top of him. Id. at 170L1-P172L7. His phone, which he kept in the pocket of his pants, was inundated with urine during the struggle from underneath Galfy. Id. at P178L9-13, P180L4-8; See also Id. at P209L7-P210L19 (Petitioner had urinated underneath Galfy, and the urine had soaked his pants and inundated his phone), P223L13-P224L15 (Same).

33.) On April 23, 2024, Respondent argued during summations to the jury that the video depicting a male at Long Branch with short hair, on the phone at the exact same time as Kim's phone records indicate the message being left, was not depicting Petitioner at all. ECF 12.44, P40L6-P42L1. The State claimed instead that Petitioner cut his hair after the incident, to "change his identity". Id. at P55L2-4. The State reiterated Petitioner's statement that he had been drugged by Galfy, then said "it didn't happen, because none of the evidence here shows there's any kind of drugs or anything used on [Petitioner]." Id. at P44L1-6. The State claimed that Petitioner would have had to been dragged by Galfy down the hall if he had been drugged in the kitchen. Id.

at P44L14-P45L4. The State claimed that Petitioner  knocked Galfy
down, and kicked him from overhead. Id. at P46L22-P47L5, P63L18-21
The State claimed that Petitioner "pull[ed] back on the neck", from
overhead, despite the absence of any grab marks on the head, face,
or neck. Id. at P47L7-10, P48L2. The state claimed that the urine
stain in the carpet was nothing but blood, basing its reliance on
Gardner's testimony. Id. at P48L19-P49L5 ("This area, if you want
to believe that something in here could have been urine or anything
else -- I submit to you as Sergeant Gardner told you, that wasn't
the case. Everything was consistent with what the crime scene
shows, and they say dead men tell no tales, but through the hard
work of law enforcement officers they do. They tell the tale that
this is blood. She walked around. What is this that she pointed out
to you on the rug? They look like steps to her, the trained eye
that sees it. She sees this. There's a lot of blood that was coming
out but then it dries up."); P50L19-25 ("Now, when Joe is removed,
what is that consistent with? Look at number 3. Just like Sergeant
Gardner told you. The blood had come out and now it's starting to
dry up, just like a river recedes along the shore and you see it.
Except the blood was receding, drying up, changing color. There's
nothing else there. Joe's watch on the floor."). The state claimed
that the hairs found on the vertical side of the bed were
insignificant, basing its reliance on Gardner's testimony. Id. at
P50L11-17 ("And you want to talk oh, there's some hairs over here.
Well, anyone who has a bed sheet, there's hairs everywhere. You
live in the house, as Sergeant Gardner says. Hairs are everywhere
when you get to a crime scene. We're humans. That's the crime
scene? That's what he wants you to believe as he fought for his
life and didn't know what was happening?"). The state claimed that
the pill bottles in the fridge were not valid evidence, basing its
reliance on Gardner's and Wang's testimonies. P53L23-P54L8
("Remember, Sergeant Gardner never took those vitamins out of the
fridge. The expert Cheryl Kestlinger came in and said yeah, they're

11

all what they purported to be. They're what his prescriptions were. There was no mickey in here. He didn't make him a Roofie colada. This is just what the man's drugs that he was taking because he's 74 years old. He has vitamins in the fridge. You saw Dr. Wang when he read off his chart and Ms. Reyes went through it. Fish oil, Vitamin C, Vitamin D. They're vitamins that you take."). The state capped their summation by making Petitioner's credibility the centerpiece of their case, indicating that self defense and intoxication hinged upon the jury's determination of Petitioner's credibility. Id. at P63L10-25.

34.) Circumstantial evidence was part of the the jury instructions. ECF 12.45 P73L5-P74L1, P86L11-14. The jury was instructed that evidence of "all that was said or done by Defendant preceding, connected with, and immediately succeeding the events leading to the death of Joseph Galfy, Jr. are among the circumstances to be considered." Id. P86L15-20. Because Petitioner testified in his own defense, credibility determinations of his testimony by the jury necessarily affected their verdict. Petitioner testified regarding intoxication, self-defense, and his innocence of the purpose and knowledge element of murder. The jury was instructed that their credibility determinations may be based on direct or circumstantial evidence. See Id. P76L22-P78L4. The jury was instructed that, if it found the facts of an adequate provocation, it could acquit Petitioner of murder and convict him instead of the lesser offense of passion/provocation manslaughter. Id. at P88L23-P91L19. The jury was instructed that they could acquit Petitioner if they found he used deadly force reasonably believing he did so to protect himself against aggravated sexual assault or sexual assault. Id. at P99L7-21. Aggravated sexual assault includes sexual contact with a person the assailant believes to be incapacitated by drugs. See N.J.S.A. 2C:14-2(a)(7). The trial judge also gave the jury a charge that placed the burden of proving intoxication "by clear and convincing evidence" on the

Petitioner, without distinguishing intoxication per se from intoxication constituting an affirmative defense. ECF 12.45, P103L9-15.

35.) Based on the State's summation and the jury instructions, successful impeachment of Ho's, Gardner's and Wang's testimony would be likely to have an effect on the jury's verdict, and impeachment evidence of those witnesses would be material.

36.) Based on Petitioner's testimony and the jury instructions, evidence bolstering or corroborating Petitioner's testimony would be likely to have an effect on the jury's verdict, and bolstering or corroborating evidence of Petitioner's testimony would be material.

37.) Based on the jury instructions, evidence showing that Petitioner reasonably believed he was being sexually assaulted at the time he used force in self-defense was material, and would be likely to have an effect on the jury's verdict.

38.) Based on the jury instructions, evidence showing that Petitioner was intoxicated at the time he used force in self-defense was material and would be likely to have an effect on the jury's verdict.

39.) On April 16, 2019 the Trial Court indicated that presenting evidence that "would impugn somehow bad faith to the prosecutor" would be "inappropriate." ECF 12.41, P125L4-13.

40.) On April 18, 2019, the State Trial Court found that counsel foisted upon Petitioner did not present the Brady claim to the Trial Court. ECF 12.43, P38L24-P39L3.

41.) The State Trial Court did not make any findings of fact upon the carpet in the master bedroom; the glasses in the dishwasher or sink; the pill bottles in the fridge; nor the 2 hours of missing NJT video surveillance from Asbury Park on May 12, 2013 from 12:44pm to 2:44pm. ECF 12.43, P38L18-P45L15.

42.) The Brady claim raised in the instant habeas petition was never presented to the jury for its consideration.

13

43.) Respondent admitted at trial that "There has been no testimony in this case about what a rape kit actually is or how it works. ECF 12.43, P27L22-23.

44.) On June 3, 2020, Petitioner filed a pro se supplemental brief in support of his plenary appeal; in which, he raised his December 27, 2018 pro se Brady motion. Plaintiff adopted by reference his entire Brady motion in substantial complaince with the New Jersey Court Rule R. 1:4-3, by stating on P.62 of his pro se supplemental brief: "Appellant's right to self-representation attached to said motion, which is attached hereto as Dal and incorporated as if fully set forth herein." A true and correct copy of this June 3, 2020 pro se supplemental brief is attached to the habeas petition in this matter as Exhibit C. ECF 1.9, ECF 12, "9" and "13" (State admits factual basis of grounds exhausted).

45.) The New Jersey Superior Court - Appellate Division based its decision on the December 27, 2018 motion, renewed ore tenus with a motion to self-represent on January 7, 2019, solely on procedural grounds, without any alternative adjudications of the merits. See ECF 12.19, P.34; See also ECF 12, P.45 ("On the record on January 7, 2019, Judge Kirsch informed Petitioner that he was striking the motions for failure to comply with the court rules)(Plural "motions" in original).

46.) On August 25, 2021, petitioner filed a pro se petition for certification with the Supreme Court of New Jersey. Petitioner adopted by reference his entire pro se Brady motion, which was incorporated into and attached to his June 3, 2020 pro se supplemental plenary brief; in substantial compliance with the New Jersey Rules of Court R. 1:4-3. Petitioner additionally sent 5 copies of his pro se Apellate brief and appendix, including his December 27, 2018 Brady motion; to the NJ Supreme Court: together with and in the same box as his petition, as required by the Court Rules. Petitioner thereby presented his pro se Brady motion to the highest State Court for review. A true and correct copy of this

14

August 25, 2021 petition for certification is attached to the habeas petition in this matter as Exhibit D. See ECF 1.10, ECF 12, "9" and "13" (State admits factual basis of grounds exhausted).

47.) The last reasoned state Court opinion clearly and expressly relied solely on state procedural grounds to deny relief for grounds one and two of Petitioner's habeas petition. ECF 12, P.20, "Affirmative Defenses Point I", P.45 (Respondent referes to "motions" in the plural).

48.) Respondent has pleaded no Court Rule or clearly established, regularly followed procedure in support of their affirmative defense of procedural default. See ECF 12.

49.) The true docket report of the state court proceeding is attached as 52a-58a to Defendant's Appendix; ECF 12.7. This docket report shows on pages 55a-56a at entries CRM2018822401, CRM2018822465, and CRM201924411 that Plaintiff submitted a Notice of Motion to Dismiss the indictment together with a Brief, proposed form of order, proof of service, and certification/affidavit in support thereof, on December 27, 2019; which the trial Court deleted on January 10, 2019.

50.) The docket shows that Respondent has deleted the documents described in "49", thereby destroying its records thereof.

51.) The documents described in "49" constitute the essential requirements of supporting documents for written motions as set forth by N.J.C.R. 1:6-2(a)

52.) Plaintiff has fully exhausted the factual and legal basis of both his grounds for relief in this action, ECF 12, "9" and "13" (State admits factual and legal basis of grounds exhausted).

53.) Petitioner is in State custody pursuant to a state conviction, ECF 12, "1"-"11" (State admits Petitioner's allegations that he is in State Custody pursuant to a State conviction).

15

54.) Petitioner's petition for writ of habeas corpus filed June 22, 2022 in this matter is timely, ECF 12, "18" (State admits factual basis of grounds exhausted).

Date: 8/12/24

_____

Caleb L. McGillvary, Pro Se
#1222665/SBI#102317G NJSP
PO Box 861 Trenton, NJ
08625-0861

16

C MCGILLVARY
#1222665/SBI#102317G
NJSP PO BOX 861
TRENTON, NJ
08625



AFRAYED.

RECEIVED
NOV 18 2024
AT 8:30_____M
CLERK, U.S. DISTRICT COURT - DNJ

RECEIVED
NOV 18 2024
AT 8:30_____M
CLERK, U.S. DISTRICT COURT - DNJ

RECEIVED
NOV 18 2024
AT 8:30_____M
CLERK, U.S. DISTRICT COURT - DNJ

RECEIVED
NOV 18 2024
AT 8:30_____M
CLERK, U.S. DISTRICT COURT - DNJ

CLERK
U.S. DIST. CT. - D.N.J.
4TH & COOPER STS.
CAMDEN, NJ
08101-2797

LEGAL MAIL

LEGAL MAIL